UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

STEVEN M. GRESHAM,
                        Plaintiff,

v.                                                      Case No. 1:09-cv-236-MP-GRJ

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                        Defendant.
_____

## REPORT AND RECOMMENDATION

Plaintiff appeals from a final decision of the Commissioner of Social Security (the "Commissioner") terminating his disability insurance benefits and requiring repayment of benefits, based upon a finding that Plaintiff was engaged in substantial gainful activity. Doc. 1. The Commissioner has answered (Doc. 5), and both parties have filed briefs outlining their respective positions. Docs. 13 & 18. For the reasons discussed below, the undersigned respectfully recommends that the Commissioner's decision be reversed and remanded for further consideration.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits under Title II on March 1, 2002, alleging disability due to Meniere's Disease (vestibular disorder or vertigo) and a disability onset date of December 15, 2001. R. 26-28. The Social Security Administration ("SSA") awarded disability benefits beginning in June 2002. R. 30. In July 2007, the SSA commenced an investigation of Plaintiff's disability payments due to income that was reported as self-employment income on Plaintiff's income tax

returns. Following the investigation, the SSA notified Plaintiff that he was not entitled to payments that he received for the month of June 2003 and thereafter, following the conclusion of a trial work period that ended in February 2003.[1] R. 90-92. The decision was upheld on reconsideration. R. 105-07. Plaintiff requested and received a hearing before an Administrative Law Judge ("ALJ"). R. 155. Following the hearing, the ALJ issued an unfavorable decision. R. 11-25. The Appeals Council declined review, making the decision of the ALJ the final decision of the Commissioner. R. 5-7. This action followed.

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord, Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

---

[1] Under the regulations, a disabled claimant is entitled to a nine-month "trial work period" during which he can engage in substantial gainful activity and continue to receive disability benefits. 20 C.F.R. § 404.1592. Benefits are paid for the month that disability ends and the following two months, no matter how much the claimant has earned; thus Plaintiff was entitled to receive benefits through May 2003. R. 90. A claimant who demonstrates an ability to remain gainfully employed during this trial work period will, thereafter, lose his entitlement. Following the trial work period, however, there is a 36-month extended period of eligibility during which, if the substantial gainful activity ceases, benefits will be reinstated without reapplication. 20 C.F.R. § 404.1592a.

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied). The district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making a claimant unable to do his previous work or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

If a claimant is entitled to disability benefits due to a severe impairment, the continued entitlement to benefits must be reviewed periodically. 20 C.F.R.

§ 404.1594(a). In limited situations, a disability can be found to have ended even though there has been no medical improvement in a claimant's severe impairment. *Id.* § 1594(d). One such exception is when a claimant is engaging in substantial gainful activity. *Id*. § 1594(d)(5). If a claimant is engaging in substantial gainful activity, and any applicable trial work period has ended, then the SSA will find the disability to have ended. *Id*.

### III. SUMMARY OF THE RECORD EVIDENCE

Plaintiff worked as a pharmacist in his pharmacy, Gresham Health Services, Inc., until 2001 when he became unable to work due to Meniere's Disease. R. 153. In 1999, Plaintiff, his wife, and others formed Gresham Management Group, Inc. ("GMG"), a Subchapter S corporation that invested in commercial real estate. R. 74. Plaintiff's wife passed away in April 2007. Prior to her death, Plaintiff and his wife each owned 35 shares of GMG individually, and they owned 15 shares jointly. At the time of the hearing in February 2009, Plaintiff owned 85% of the shares of GMG, and another individual owned the remaining 15%. R. 74, 158. Plaintiff's income tax returns reported self-employment income from GMG identified as "management fees" in amounts ranging from $19,239 to $36,017 per year from 2000 to 2006. Plaintiff also reported rental income, interest income, and income from the sale of business property owned by GMG. R. 66.

In connection with the SSA's investigation, in July 2007 Plaintiff completed a "Work Activity Report (Self-Employed Person)". R. 35. Under "name and address of business," Plaintiff noted that he "invested in commercial real estate before my disability. There is no 'business.'" R. 35. Plaintiff also represented that his

4

responsibilities involve paying bills, depositing rent checks, and occasional phone calls. He noted that he pays a part-time handyman for zero to eight hours of work per month for "minor maintenance & repairs and to show the space if vacant." In response to a question regarding how his work activities changed following his illness, Plaintiff stated that he used to do the tasks that the handyman now performs, but that his illness prevents him from doing those tasks. *Id*. Plaintiff explained that the only management decision he makes regarding GMG is "when to pay property tax." *Id*. Plaintiff stated that his "'work'" for GMG requires about the same effort "that a prudent investor would spend on following his stocks in the stock market. All of my efforts are mental." *Id*.

In October 2007, Plaintiff completed a Corporate Officer Questionnaire stating that he spent about four to seven hours per month paying bills, depositing checks, and calling for repairs if needed, and that these duties are "nominal." R. 74. In March 2008, Plaintiff completed a Request for Reconsideration form stating that the income he received from GMG was rental income from an investment he made before he was disabled, and that his wife did all of the "work" generated by the rental income until her death. R. 93.

Plaintiff appeared at the hearing with his counsel of record, Mr. Silverman, and with an attorney/CPA, Ms. Pastis. R. 155. Mr. Silverman stated that Plaintiff identified the "self-employment" income to the SSA as rental income at the time that disability benefits were awarded. Counsel stated that Plaintiff did not have an active role in managing the property. He explained that Plaintiff owns 85% of the shares of GMG, and that the corporation exists to take in rental payments. Mr. Silverman stated that Plaintiff is the sole obligor on the mortgage and promissory note for the commercial

property owned by GMG, and that the payments reported as "management fees" on his tax returns were additional rent amounts that Plaintiff received as compensation for his assumption of the risk in the property.  Mr. Silverman and Ms. Pastis stated that the payments were mischaracterized on Plaintiff's tax returns, and that the payments could be characterized as a corporate Board of Director fee or rental income, but that in any event the payments were not earned income.  While the mischaracterization would be corrected on subsequent returns, Ms. Pastis opined that it was not necessary for Plaintiff to file amended tax returns.

Plaintiff testified that GMG does not have an office, and that he receives phone calls regarding the rental property "maybe once every three months."  His only regular activity regarding GMG is depositing the four or five checks that arrive at the beginning of the month, and writing a similar number of checks.  He estimated that such activity required about an hour each month, and could have been done by someone else. Plaintiff's wife made the bank deposits for GMG until she passed away in 2007. Plaintiff testified that the property owned by GMG had leases averaging seven to eight years. The minority shareholder is not involved in the management of the property. The tenants are responsible for maintenance, except for the roof and the parking lot.  If a repair is needed for the roof or the parking lot, then Plaintiff calls someone to make the repairs.

Plaintiff completed a Disability Update Report form in February 2008, stating that he had exhausted all options for treatment of his vertigo, including brain surgery.  In his Request for Reconsideration, Plaintiff stated that he was "struggling with depression,

swollen and painful feet and calves and minor injuries from falls, all due to the vertigo." R. 94.

In July 2009, Plaintiff submitted an affidavit in support of his request for reconsideration by the Appeals Council. R. 153. Plaintiff stated that he had been unable to work since the onset of his disability in 2001. Prior to becoming disabled, Plaintiff was a majority shareholder in GMG which owned two commercial rental properties until 2005, and only one property after 2005. He stated that GMG's tenants pay rent on the first of the month and are responsible for their own maintenance, repairs, and utilities. GMG does not provide any services apart from payment of utilities for common areas and payment of taxes. Plaintiff conceded that he reported income denominated as "management fees" from GMG, but averred that he "did not 'manage' the rental property." Noting that the characterization of the payments was "unfortunate," Plaintiff stated that:

> [T]he payments came from the Rent for the property and thus were effectively a super-sized share of the rent. The payments were intended to compensate me and my wife, the majority shareholders in the GMG, for securing the financing for the real estate investment with our credit and for being the primary obligors on the mortgage. I have always viewed the payments as an extra share of the rent income since they were paid regardless of what I did or did not do . . . .
>
> My wife died unexpectedly in April 2007. Until then, she performed the necessary property ownership acts for GMG consisting of writing a few checks and making a couple of bank deposits for the rent monthly, averaging less time monthly than she spent performing the same functions for our household. Since April 2007, I have assumed these functions. The 'management fees' were not paid in her name.
>
> I have subsequently learned that characterizing the payments as 'management fees' was inappropriate but I was personally unaware of a more appropriate tax descriptor at the time I filed the tax returns. I have not amended my tax returns to recharacterize these payments as either

7

> 'rent' or 'interest income' which better reflects their character as the statute of limitations for most of the years in question is now closed. Further, calling the payments a new name or putting them into a new category does not change what they are, the basis or reason for having made the payments, namely a bonus for being creditworthy.
>
> . . .
>
> When my wife . . . passed away . . . I assumed the few ownership duties pertaining to the rental property that she had performed, such as making bank deposits and writing out checks to pay the few bills associated with the property. In the July 30, 2007, work activity report that I submitted to the SSA, I informed the SSA of my duties but did not clearly state that these were duties that had previously been performed by my wife. The 'management fee' payments to me did not increase as a result of my assuming these duties as they still had nothing to do with writing the checks or making the deposits.

R. 153-54.

## IV. **THE ALJ'S FINDINGS**

The ALJ concluded that Plaintiff's "earnings from work as a property manager" for GMG for the years 2001-2006 were countable as self-employment earnings under the applicable regulations and SSA Program Operations Manual System ("POMS"). In determining that Plaintiff's earnings exceeded the relevant regulatory limit for substantial gainful activity, the ALJ deducted $80 from Plaintiff's reported monthly earnings as an expense for hiring a handyman at the rate of $10 per hour for up to eight hours each month. The ALJ noted that the determination of whether a self-employed person has engaged in substantial gainful activity is governed by the three tests set forth at 20 C.F.R. § 404.1575(a).[2] The ALJ found that Plaintiff met Test One "as he

---

[2]An alternative test, the "countable income test" for disability cessation did not apply to Plaintiff because he did not receive benefits for 24 months between June 2002, his month of entitlement, and March 2003, the first month of substantial gainful activity

(continued...)

rendered services that were significant to the operation of his one-person business (property management) **and** as he received substantial income (SGA) from his business." The ALJ also found that Plaintiff met Test Two "as there does not appear to be a difference between [Plaintiff's] work activities compared to that of unimpaired individuals in his community who are in the same or similar businesses as their means of livelihood, as the required duties were only 'nominal'". The ALJ found that Plaintiff did not meet Test Three, "as his work activity might not clearly be worth the amount of his earnings." The ALJ found that Tests Two and Three were in any event inapplicable because Plaintiff met Test One. Based on these findings, the ALJ determined that Plaintiff's disability ceased effective March 2003. R. 24-25.

## V. DISCUSSION

The sole issue presented on appeal in this case is whether there is substantial evidence in the record to support the ALJ's conclusion that Plaintiff's disability ceased effective March 2003, following the end of his trial work period, because he was engaged in substantial gainful activity as a self-employed "property manager."

"Substantial gainful activity is work activity that is both substantial and gainful." 20 C.F.R. § 404.1572. Activity is "substantial" if it "involves doing significant physical or mental activities." *Id*. § 404.1572(a). Activity is "gainful" if it "is the kind of work usually done for pay or profit, whether or not a profit is realized." *Id*. § 404.1572(b).

---

[2](...continued)
after the conclusion of the trial work period. *See* POMS §§ DI 10510.001 and DI 10510.015.

For a person who is self-employed, "[s]upervisory, managerial, advisory or other significant personal services that [a claimant] perform[s] ... may show that [a claimant] is able to do substantial gainful activity." *Id*. § 404.1573(d). In determining whether to award benefits, the Commissioner "will consider [a claimant's] activities and their value to [claimant's] business to decide whether [claimant has] engaged in substantial gainful activity." *Id*. § 404.1575(a)(2). The regulations provide, with respect to self-employment:

> We will not consider your income alone because the amount of income you actually receive may depend on a number of different factors, such as capital investment and profit-sharing agreements . . . . We will evaluate your work activity based on the value of your services to the business regardless of whether you receive an immediate income for your services.

*Id*.

A Social Security Ruling explains further:

> In determining whether a self-employed individual is engaging in SGA [substantial gainful activity], consideration must be given to the individual's activities and their value to his or her business. Self-employment income alone is not a reliable factor in determining SGA, since it is influenced not only by the individual's services but also by such things as market conditions, capital investments, the services of other people, and agreements on distribution of profits. An individual's services may help build up capital assets during a period of development when no profits are evident, or they may reduce losses during temporary periods of poor business conditions.

Social Security Ruling (SSR) 83-34.

Whether a self-employed individual is engaged in substantial gainful activity is evaluated under three tests:

> (i) Test one: You have engaged in substantial gainful activity if you render services that are significant to the operation of the business and receive a substantial income from the business. Paragraphs (b) and (c) of this

section explain what we mean by significant services and substantial income for purposes of this test.

(ii) Test Two: You have engaged in substantial gainful activity if your work activity, in terms of factors such as hours, skills, energy output, efficiency, duties, and responsibilities, is comparable to that of unimpaired individuals in your community who are in the same or similar businesses as their means of livelihood.

(iii) Test Three: You have engaged in substantial gainful activity if your work activity, although not comparable to that of unimpaired individuals, is clearly worth the amount shown in § 404.1574(b)(2) when considered in terms of its value to the business, or when compared to the salary that an owner would pay to an employee to do the work you are doing.

20 C.F.R. § 404.1575(a)(2); see also SSR 83-34.

For a one-person business, the "services of an individual . . . are necessarily 'significant.'" POMS § DI 10510.015(B)(1)(a). If a business involves more than one person, services are "significant" if a person "contribute[s] more than half the total time required for the management of the business, or . . . render[s] management services for more than 45 hours a month regardless of the total management time required by the business." 20 C.F.R. § 404.1575(b)(1); POMS § DI 10510.015(B)(1)(b). Income is considered "substantial" if it "averages more than the amounts described in § 404.1574(b) (2)." Id. § 404.1575(c).

### A. **PLAINTIFF'S ARGUMENTS**

Plaintiff contends that there is not substantial evidence in the record to support a conclusion that he engaged in substantial gainful activity under Test One (as found by the ALJ). Although Plaintiff concedes that the reported income from "management fees" was "substantial," he asserts that he has rebutted any presumption that he has engaged in substantial gainful activity by evidence that he did not perform significant

services for the so-called management fees.  Plaintiff contends that the ALJ erred in finding that the maximum of four to seven hours he spent per month paying bills, depositing checks, and making infrequent phone calls amounted to "significant services."  Plaintiff disputes that he was the sole operator of a "business," inasmuch as GMG is a real estate investment, but that even if it were a business the tasks of receiving rent checks, depositing the checks, and infrequently hiring repairmen are not "work activit[ies] that involve[] doing significant physical or mental activities."  Doc. 13 (quoting R. 22 and 20 C.F.R. § 404.1572(a)).  Plaintiff points out that the ALJ characterized these activities as "nominal," and argues that these actions were, at most, those of a prudent investor.  Plaintiff also contends that the ALJ erred in concluding that he engaged in substantial gainful activity under Test Two.

## B. DEFENDANT'S ARGUMENTS

The Commissioner concedes that the ALJ erroneously assessed Plaintiff's activities under Test Two because the ALJ did not provide a specific comparison of Plaintiff's work activity as a property manager to that of unimpaired individuals in the community making their livelihood from the same or similar kinds of business.  Doc. 18 (citing POMS DI 10510.020(B)).  The Commissioner argues that the ALJ's decision should nevertheless be upheld insofar as the ALJ found that Plaintiff performed substantial gainful activity under Test One.  The Commissioner states that while Plaintiff's passive receipt of rent checks and occasional hiring of workers may have been "nominal" services, Plaintiff performed other services for the corporation such as deciding when to receive a salary, when to pay property taxes, and when to hire a handyman.  The Commissioner also points out that Plaintiff wrote checks, completed

deposit slips, handled occasional phone calls, knew how many tenants he had, and knew the duration of their leases.

## C. ANALYSIS

On this record, the Court concludes that the ALJ's determination that Plaintiff was engaged in substantial gainful activity during and after his trial work period was based on an erroneous application of the regulations. The ALJ initially analyzed Plaintiff's activities under 20 C.F.R. § 404.1575(b)(1) and POMS § DI 10510.015(B)(1)(b), which set forth the standards for determining what services are significant with respect to "a sole owner or partner, *in a business involving the services of more than one individual.*" R. 21-22. The ALJ determined that the evidence did not show that Plaintiff performed property management services for GMG for more than 45 hours per month. *Id*. The ALJ did not, however, assess whether Plaintiff contributed more than half the total time required for the management of the business, in light of the evidence of record that Plaintiff's business involved the services of more than one individual, as required by the same regulation. *See* 20 C.F.R. § 404.1575(b)(1) and POMS § DI 10510.015(B)(1)(b). *See* R. 21-22.

The ALJ pointed to Plaintiff's July 2007 Work Activity report as evidence that Plaintiff's "duties included paying bills, depositing rents, handling occasional phone calls, showing space if available, deciding when to pay property tax, and paying a part-time . . . handyman for minor repairs and maintenance and to show vacancies." R. 22. The ALJ also pointed to Plaintiff's October 2007 corporate officer questionnaire, in which Plaintiff stated that he determined his own management fee, and worked four to seven hours per month paying bills, depositing checks, and calling for repairs. *Id.* The

13

ALJ noted that Plaintiff stated in his March 2008 request for reconsideration that his wife "had done all the work for the rental," *Id*. The ALJ did not, however, discuss the other evidence in the record regarding the participation of Plaintiff's wife in the business.

Plaintiff's wife was an equal shareholder in the business until she passed away in April 2007. Plaintiff's March 2008 Request for Reconsideration form stated that "[s]he [Mrs. Gresham] does all the 'work.' My wife died suddenly last year and I don't have anyone to help me as she did." R. 93-94. The ALJ did not discredit the veracity of Plaintiff's testimony at the hearing that his wife "helped me out with most of this stuff," including making the bank deposits. R. 162. Plaintiff testified that after his wife's death he handled the monthly paperwork, which required about one hour per month. R. 161. The sworn affidavit that Plaintiff submitted in support of his request for review by the Appeals Council states that until her death in April 2007 his wife handled the "necessary property ownership acts" for GMG, such as writing checks and making bank deposits. R. 153, 155.

In addition to the evidence that Plaintiff's wife actively participated in the management of the rental property during and after his trial work period, Plaintiff's July 2007 Work Activity report reflected that the management of the property also required up to eight hours per month of services for minor repairs and showing vacant space. Plaintiff stated that he was unable to provide such services following the onset of his illness and had to hire someone else to do them, although the record is not clear as to exactly when Plaintiff ceded these tasks to another person. R. 35. The ALJ accounted for the handyman's fees in determining whether Plaintiff's earnings exceeded the

14

presumptive limit for substantial gainful activity, but the ALJ did not consider whether these services also reflected time required for the management of Plaintiff's business, in view of the fact that Plaintiff previously performed these tasks himself.  As the record stands, the evidence suggests that Plaintiff's property management activities involved the services of two or three persons: Plaintiff, his wife who was an equal shareholder until April 2007, and the individual hired to perform the property management tasks that Plaintiff was no longer able to perform.  *See* 20 C.F.R. § 404.1575(b)(1) and POMS § DI 10510.015(B)(1)(b).

The Commissioner argues that Plaintiff's allegation that "his wife was largely responsible for running the business until her death in 2007" is contradicted by the record.  Doc. 18.  As support for this argument, the Commissioner points to Plaintiff's July 2007 Work Activity report in which he stated that "I don't think this investment should be considered work just because of the way I filled out a tax return (my wife actually took care of that for me.)" R. 37.  Plaintiff's 2005 tax return reflects that it was prepared by an accountant, and the Commissioner notes that Plaintiff's counsel reported at the hearing that Plaintiff (not his wife) provided his tax information to his accountant.  The Commissioner, like the ALJ, does not explain why Plaintiff's sworn testimony and affidavit on this point should not be credited, and to the extent that this information may be deemed even "contradictory" such conflicts should have been resolved by the ALJ, after considering *all* of the evidence in the record.

By applying the "45-hour" part of the test of significant services for businesses that involve more than one person, the ALJ implicitly appears to have accepted that Plaintiff's business involved the services of more than one person.  *See* R. 22.  If so,

15

then the ALJ should have considered whether Plaintiff was contributing more than half of the total time required for the property management activities associated with the GMG rental property after the end of his trial work period, in accordance with the remainder of the regulation. *See* 20 C.F.R. § 404.1575(b)(1); POMS § DI 10510.015(B)(1)(b). In his enumerated findings, the ALJ inconsistently refers to Plaintiff's "one-person business." R. 24, ¶ 8. The failure to fully assess the nature of Plaintiff's business and to clearly explain which test of "significant services" was applied leaves the Court with an insufficient basis for deciding whether the ALJ's decision is supported by substantial evidence.

Title 42, United States Code, Section 405(g), empowers the Court to reverse the decision of the Commissioner with or without remanding the cause for a rehearing. *Shalala v. Schaefer*, 509 U.S. 292 (1993). Where the district court cannot discern the basis for the Commissioner's decision, a sentence four remand is appropriate to allow him to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 827, 829-30 (11th Cir. 1984). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.

## VI. <u>RECOMMENDATION</u>

Accordingly, it is respectfully **RECOMMENDED** that the Commissioner's decision that Plaintiff is not entitled to benefits because he performed substantial gainful activity following his trial work period be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand the ALJ should be instructed to assess thoroughly the nature of Plaintiff's activities with respect to GMG's rental property and the extent of the participation of other persons in the management of the rental property

– relative to Plaintiff's participation – in determining whether Plaintiff rendered significant services to the business.

**IN CHAMBERS** this 17th day of February 2011.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

**NOTICE TO THE PARTIES**

**Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**